```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

JUSTIN GUY,                      )   CIVIL NO. 14-00400 SOM/KSC
                                 )
          Plaintiff,             )   ORDER GRANTING MOTION FOR
                                 )   TEMPORARY RESTRAINING ORDER
     vs.                         )
                                 )
COUNTY OF HAWAII,                )
                                 )
          Defendant.             )
_____  )
```

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**

**I.      INTRODUCTION.**

Plaintiff Justin Guy moves for a temporary restraining order, or, in the alternative, for a preliminary injunction enjoining Defendant County of Hawaii from interfering with his holding of a sign in public areas stating that he is homeless and needs help.  This order addresses only the request for a temporary restraining order.  The court has set a discovery cutoff, briefing deadlines, and a separate hearing date for the portion of the motion that seeks a preliminary injunction.  The court now temporarily enjoins Defendant County of Hawaii from enforcing section 14-75 of the Hawaii County Code ("HCC") against Guy.  This order in no way restricts the County from enforcing other state or county laws, including, for example, laws prohibiting harassment.

**II.     FACTUAL BACKGROUND.**

In April or May of 2014, Guy stood by a telephone pole

on Kaiwi Street near its intersection with Luhia Street in Kailua-Kona on the Big Island, holding a sign saying, "Homeless Please Help." ECF No. 2-1, PageID # 34. According to Guy, a Hawaii County Police Department ("HCPD") officer in a car stopped, rolled down his window, and told Guy that what he was doing was illegal and that he could not continue. Id., PageID # 35. After the officer drove away, another HCPD officer drove up and asked Guy what the first officer had told him. Id. Guy says he told the second officer what the first officer had said, and the second officer told Guy that he should leave right away. Id.

On June 3, 2014, Guy held the same sign at the same location. Id. Guy says that HCPD Officer Ochoa drove up and told him that what he was doing was illegal, that he needed to leave, and that he should get a job. Id. Guy told Officer Ochoa that panhandling was not illegal. Id., PageID # 36. According to Guy, Officer Ochoa then parked his car, asked Guy for identification, and issued a citation for a violation of section 14-75 of the HCC for "Panhandling." Id.; ECF No. 2-4, PageID # 64. The citation states: "Def holding sign at Kaiwi/Luhia busy intersection. Sign read Homeless please help. When asked by police to leave the area, party refused." ECF No. 2-4, PageID # 65. Guy says that he told Officer Ochoa that he would hold his sign somewhere else, but that Officer Ochoa told him he would be arrested if he did that. ECF No. 2-1, PageID # 35.

2

Officer Ochoa's version of what happened is that he saw Guy approach two vehicles and cause traffic to slow.  ECF No. 10, PageID # 121.  Officer Ochoa says he thought Guy was creating a traffic hazard, so asked Guy to leave.  Id.  When Guy refused, Officer Ochoa says he issued a citation.  Id.

On July 14, 2014, a Deputy Prosecuting Attorney filed an "Amended Complaint" against Guy that changed what Guy was being cited for.  The amendment made no reference to section 14-75 and instead alleged that Guy had "willfully failed or refused to comply with a lawful order or direction" by Officer Ochoa, thereby violating section 291C-23 of Hawaii Revised Statutes.  ECF No. 2-10, PageID # 100.  Section 291C-23 states: "It shall be a petty misdemeanor for any person to wilfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic."

On August 18, 2014, the prosecuting attorney filed a Motion for Nolle Prosequi Without Prejudice As to All Counts.  ECF No. 2-11, PageID # 102.  The motion was granted.  ECF No. 2-1, PageID # 38.

Guy says that the 2014 incident was not the only time his attempts to collect donations were stopped.  He says that approximately eighteen months ago, he was siting on a wall near 75-5718 Alii Drive, playing his guitar with a sign in his guitar

3

case saying "Tips," when an HCPD officer told him that his sign, like all other signs, was not permitted. Id., PageID # 36-37. Guy says that he therefore no longer places signs in his guitar case. Id., PageID # 37.

Guy commenced the present case on September 8, 2014, asserting claims under the First Amendment, Fourth Amendment, and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. ECF No. 1, PageID # 14-18. Among other things, he seeks a declaration that sections 15-20(a) and 14-75 of the HCC are unconstitutional, both facially and as applied to him.[1]  Id., PageID # 18-19.

On September 8, 2014, Guy also filed the present motion for a temporary restraining order, or, in the alternative, for a preliminary injunction, requesting that this court enjoin the County from interfering with his holding of a sign in public areas stating that he is homeless and needs help. ECF No. 2, PageID # 33. At the hearing on the TRO portion of his motion, Guy clarified that he wanted to be able to hold signs seeking donations in public areas along streets and roads without risking citations or arrests. Guy also clarified that he is not seeking relief with respect to section 15-20(a) in the TRO portion of his motion.

---

[1] Although his Complaint and TRO motion stated that he was not challenging section 14-75(a)(4), Guy states in his reply memorandum that he has ultimately decided to include subsection (a)(4) in his constitutional challenge.

**III.     STANDARD.**

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., Civ. No. 12-00064 LEK-KSC, 2012 WL 381209, *6 (D. Haw. Feb. 3, 2012). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); accord Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under Winter, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.").

The Supreme Court has cautioned that a "preliminary injunction is an extraordinary and drastic remedy never awarded as of right." Winter, 555 U.S. at 24. Courts balance the competing claims of injury and consider the effect on each party of granting or denying the injunction. Id.

**IV.     ANALYSIS.**

      **A.  Likelihood of Success on the Merits.**

Guy is likely to succeed on the merits of his challenge to section 14-75 of the Hawaii County Code.

Section 14-75 places various restrictions on solicitation. Under the ordinance, aggressive solicitation in any public place is prohibited. HCC § 14-75(a)(1). Solicitation is also prohibited: (1) while under the influence of alcohol or a controlled substance; (2) while in any public transportation vehicle, at any bus station or stop, or in any public parking lot or public parking structure; (3) while within ten feet of a pay phone; (4) while within twenty feet of public toilets; and (5) within twenty feet of an entrance or exit to any financial institution or ATM, restaurant, or building, without the consent of the owner or a person legally in possession of the premises. HCC § 14-75. Section 14-75 also provides that "[n]o person shall solicit an operator or other occupant of a motor vehicle while such vehicle is located on any street, for the purpose of performing or offering to perform a service in connection with such vehicle or otherwise soliciting the sale of goods or services" except for requested emergency repairs, and that "[n]o person shall solicit from any operator or occupant of a motor vehicle on a public street in exchange for blocking, occupying, or reserving a public parking space, or directing the operator or

6

occupant to a public parking space."  Id.

"Soliciting" is defined as:

> [A]sking for money or objects of value, with the intention that the money or object be transferred at that time, and at that place. Soliciting shall include using the spoken, written, or printed word, bodily gestures, signs, or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services.

H.C.C. § 14-74(a).

Solicitation is entitled to First Amendment protection. See Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests-communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes-that are within the protection of the First Amendment."); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 945 (9th Cir. 2011) ("Solicitation constitutes protected expression under the First Amendment."); ACLU of Nevada v. City of Las Vegas, 466 F.3d 784, 792 (9th Cir. 2006) ("It is beyond dispute that solicitation is a form of expression entitled to the same constitutional protections as traditional speech.").

The County does not appear to contest that section 14-75 restricts solicitation in public fora.  Public streets and sidewalks, both of which are covered by section 14-75, are

traditional public fora in which the government's right to limit expressive activity is "sharply circumscribed." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983); Comite de Jornalero, 657 F.3d at 945.  It has sometimes been argued that public parking lots and public transportation vehicles may not qualify as public fora for purposes of the First Amendment, but the court need not resolve such issues here because Guy has confined his TRO motion to seeking protection when he is on sidewalks or alongside public roads.  Both parties appear to accept that section 14-75 must be analyzed under the standard applicable to traditional public fora.  The court assumes for the purposes of this TRO motion that such a standard applies.

Although the government's ability to regulate speech in traditional public fora is limited, reasonable time, place, and manner restrictions are permissible.  ACLU of Nevada, 466 F.3d at 792.  "To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content-neutral; (2) it must be narrowly tailored to serve a significant governmental interest; and (3) it must leave open ample alternative channels for communication of the information." Berger v. City of Seattle, 569 F.3d 1029, 1036 (9th Cir. 2009) (internal quotation marks omitted).

Guy is likely to prevail with respect to his argument

that section 14-75 does not qualify as a valid time, place, or manner restriction because it is content-based.  An ordinance is content-based "if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face."  ACLU of Nevada, 466 F.3d at 792.

Whether or not section 14-75 was enacted with the express purpose of suppressing certain speech, see ECF No. 10-6, PageID # 150, it appears to draw a distinction based on content.  Section 14-75 applies only to requests for an immediate donation of money or other thing of value; it thus singles out some solicitation speech for regulation while leaving other solicitation speech untouched.  Section 14-75 bars a homeless individual, in certain areas, from asking passersby for immediate financial assistance, while not restricting individuals who ask others to sign petitions, participate in surveys, vote for political candidates, or accept certain religious beliefs in those very same areas.  The latter activities have the potential of being intimidating to passersby, the very concern cited by the County as the motivation and justification underlying section 14-75.  A person seeking to persuade someone to support a position on abortion, global warming, or any other issue may employ the same forceful tactics the County says it wants to bar Guy from engaging in, yet solicitation for political agreement is not

9

included within section 14-75's reach.

In fact, even a solicitation for money that did not seek an immediate transfer of money would fall outside the scope of section 14-75. Thus, someone seeking pledges of future payment would be unrestricted by the ordinance.

This underinclusiveness calls into question what the County claims to have been a content-neutral purpose. See, e.g., Doucette v. City of Santa Monica, 955 F. Supp. 1192, 1205 (C.D. Cal. 1997). If section 14-75 merely regulates conduct and the *manner* of solicitation, as the County claims, it is unclear why section 14-75 does not regulate solicitation without regard to whether it seeks money or a thing of value. Because section 14-75's applicability turns on what is being solicited, this court concludes that Guy is likely to prevail in arguing that the law is content-based.

An ordinance that is content-based is presumptively invalid and subject to strict scrutiny review. ACLU of Nevada, 466 F.3d at 792. Such an ordinance survives only if the government can demonstrate that it is the least restrictive means of furthering a compelling government interest. Id.

The present record does not indicate that the County is likely to be able to make such a showing. While the County cites public safety as the government interest furthered by section 14-75, section 14-75 does not appear to be the least restrictive

means of ensuring public safety.  For example, the County does not explain how public safety is advanced at all by barring an individual from peacefully holding a sign requesting a monetary donation within twenty feet of a public toilet, something barred by section 14-75.  At this point, it is unclear why public safety cannot be addressed with less restriction than section 14-75 imposes.

Because section 14-75 is not likely to survive strict scrutiny review, the court concludes that Guy is likely to succeed on the merits of his challenge to section 14-75.

### B. Irreparable Harm.

Guy demonstrates that he is likely to suffer irreparable harm without a temporary restraining order enjoining the County from enforcing section 14-75 against him.  He shows that he is likely to succeed on the merits of his constitutional challenge to section 14-75, and the Supreme Court has made clear that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Klein v. City of San Clemente, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (quoting Elrod v. Burns, 427 U.S. 347 (1976) (internal quotation marks and brackets omitted)); see also Goldie's Bookstore, Inc. v. Superior Court of Cal., 739 F.2d 466, 472 (9th Cir. 1984) ("An alleged constitutional infringement will often alone constitute irreparable harm.").

### C. Balance of Equities.

In considering the balance of equities, the court must "balance the interests of all parties and weigh the damage to each[.]" <u>Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1203 (9th Cir. 1980). In other words, the court must "identify the harms which a [temporary restraining order] might cause to defendant[] and [] weigh these against plaintiff's threatened injury." <u>Id.</u>

The County contends that a temporary restraining order will prevent it from being able "to protect the public from aggressive solicitation." ECF No. 10, PageID # 125. However, a TRO in this case would in no way diminish the County's right to enforce the other laws it relies on to control aggressive political campaigning, aggressive social advocacy, or aggressive religious proselytizing. Guy, on the other hand, may suffer violations of his First Amendment rights. Under such circumstances, the balance of equities tips in Guy's favor. <u>See Arizona Dream Act Coal. v. Brewer</u>, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[T]he balance of the equities favor[s] preventing the violation of a party's constitutional rights." (internal quotation marks and brackets omitted)).

### D. Public Interest.

In considering whether a temporary restraining order is in the public interest, the court looks to the impact of the

temporary restraining order on nonparties.  League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 766 (9th Cir. 2014).

In this case, a temporary restraining order barring enforcement of section 14-75 against Guy is in the public interest.  He has demonstrated a likelihood that section 14-75 violates the First Amendment, and preventing constitutional violations is in the public interest.  See, e.g., Arizona Dream, 757 F.3d at 1069 ("[T]he public interest . . . favor[s] preventing the violation of a party's constitutional rights." (internal quotation marks and brackets omitted)); IBiz, LLC v. City of Hayward, 962 F. Supp. 2d 1159, 1170 (N.D. Cal. 2013) ("The public interest in upholding First Amendment principles is great; the enforcement of an ordinance that violates the First Amendment would infringe the rights of many members of the public not currently before the Court[.]"); Behymer-Smith ex rel. Behymer v. Coral Acad. of Sci., 427 F. Supp. 2d 969, 974 (D. Nev. 2006) ("[T]he Court finds that because public interest concerns are always implicated when a constitutional right is involved, and that Plaintiff has shown a likelihood of success on the merits of his First Amendment claim, the public interest also warrants issuance of a restraining order.").

**V.      CONCLUSION.**

The court grants Guy's motion for a temporary

restraining order.  The County is temporarily enjoined from enforcing section 14-75 of the HCC against Guy when he uses signs to seek donations in public areas along streets and roads.  Guy restricted the requested TRO to sign-holding and to such locations, and the court in adopting those restrictions is not suggesting that section 14-75 may constitutionally prohibit oral or other forms of solicitation for money or such solicitation in all locations other than areas along streets and roads.  This order does not restrict the County from enforcing other state or county laws.

      This order remains in full force and effect until the disposition of Guy's motion for a preliminary injunction.

      The court sets a cutoff of November 17, 2014, for discovery relating to the preliminary injunction portion of Guy's motion.  Guy may file a supplemental brief in support of a preliminary injunction by December 8, 2014.  The County's response is due by January 5, 2015.  Guy may file a reply by January 12, 2015.  The hearing on the motion for a preliminary injunction will be held on January 21, 2015 at 10:30 a.m.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 19, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Guy v. County of Hawaii, Civ. No. 14-00400 SOM/KSC; ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER